Filed 3/23/26  In re A.S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | B350333 (Los Angeles County Super. Ct. No. 18CCJP07966B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.B. et al.,<br><br>        Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County, Tara L. Newman, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant C.B.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant  M.S.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

C.B. (Mother) and M.S. (Father) appeal the termination of parental rights to their child A.S.  They argue that the juvenile court and Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the Indian Child Welfare Act (ICWA).  (Welf. & Inst. Code, § 224 et seq.)[1]  They seek remand for further inquiry into A.S.'s Indian ancestry.

We conclude that the court had sufficient information to find that ICWA does not apply.  Appellants and their extended families denied Indian ancestry.  The maternal grandmother denied Indian heritage in a concurrent proceeding for A.S.'s baby brother.  Appellants have not identified anyone who was not interviewed.  We affirm the order terminating parental rights.

## FACTS AND PROCEDURAL HISTORY

Appellants do not challenge the merits of the order terminating parental rights, only the court's ICWA findings.  Consequently, we need only briefly summarize the facts.

## BACKGROUND

A.S. was born in December 2023 and detained by police eight months later.  A dependency petition alleged parental substance abuse, violence, and mental illness.  A.S.'s older half siblings were juvenile dependents, and Mother's parental rights to one child were terminated in 2018.  Father is schizophrenic, hears voices, and threatened to kill his brother in August 2024.  Appellants frequently abandon A.S. and are unable to regularly care for her.  Mother said she is a " 'drug addict' " who uses methamphetamine.

Father's whereabouts were unknown when the court sustained the petition in October 2024.  (§ 300, subds. (a), (b), (j).)  Appellants were denied custody of A.S. at disposition in December 2024.  Mother's reunification

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

services included a drug program, counseling, anger management, and a psychiatric evaluation.  Father did not receive services.  (§ 361.5, subd. (b)(1) & (12).)  A.S. was declared a dependent of the court.  In January 2025, A.S. began living with her maternal aunt, S.B.

In April 2025, Mother gave birth to another child, Baby Boy B., who tested positive for amphetamines and marijuana, as did Mother.  He was detained and placed with relatives.  The court bypassed services and set a permanent placement hearing.

Mother was arrested in June 2025 for discharging a firearm in a grossly negligent manner.  The felony proceeding was suspended while her competency was evaluated.  At the six-month hearing in July 2025, the court terminated Mother's reunification services with A.S. and set a permanent placement hearing.

Father first appeared in August 2025.  In a petition for modification (§ 388), he said he did not previously appear because he was a fugitive and using drugs.  He was in a faith-based program and was three months' sober.  After a hearing, the court denied his request for services.

Father told DCFS he was born in Mexico.  His now-deceased mother had Father removed from her home at age 12, owing to his behavior.  Father claimed a positive relationship with paternal grandfather (PGF) but described him as a physically abusive alcoholic.  Father was not receiving psychiatric care, medication, or drug testing.  There was a bench warrant for his arrest.  He had not seen A.S. since she was detained in August 2024.

At the permanent placement hearing in November 2025, the court found A.S. is adoptable, and the benefits of adoption outweigh any benefits from a relationship with appellants.  The court terminated parental rights and identified maternal aunt S.B. as A.S.'s prospective adoptive parent.

### ICWA Inquiry

A case worker asked about Indian heritage at first contact in August 2024.  Mother, two paternal uncles and a paternal aunt all denied Indian heritage.  The father of A.S.'s half sibling denied knowing if A.S. had Indian heritage.  Counsel filed a notification for Mother, denying Indian heritage.

At the detention hearing, the court found no reason to know ICWA applies.  It asked Mother and the maternal grandfather (MGF) if they had

Indian heritage, and "both state there is no Indian Ancestry in their respective ancestral backgrounds." Mother said, "I believe I don't," and MGF said, "No." The court ordered DCFS to continue asking "any and all available relatives and case participants about the possibility of Native American ancestry throughout the life of the case."

DCFS's efforts to re-interview appellants about Indian heritage in September 2024 were unsuccessful because they did not answer phone calls. In December 2024, MGF and maternal aunt S.B. denied Indian heritage. A services coordinator for the family denied awareness of Indian ancestry in May 2025.

In his August 2025 request for a modification, Father wrote "N/A" for "not applicable" when asked for his Indian tribe and nothing on a line asking him to list his tribe. Father denied Indian heritage in court, as did the staff of his sobriety program. Father again denied Indian heritage on September 16, 2025.

Additional inquiry occurred after the birth of Baby Boy B. On April 18, 2025, Mother "denied any knowledge that the family has American Indian or Alaskan Native ancestry." The hospital's social worker, substance abuse counselor, and physician denied knowledge of Indian ancestry. On May 15, 2025, the maternal grandmother (MGM) and a paternal uncle denied Indian ancestry, as did MGF days later.

## DISCUSSION
### Overview of ICWA Requirements

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi C.*).) The juvenile court and child welfare agency have a continuing duty to inquire if a child "is or may be an Indian child." (§ 224.2, subd. (a).) An Indian child is defined as (A) a "member or citizen of an Indian tribe," or (B) "[e]ligible for membership or citizenship in an Indian tribe and is a biological child of a member or citizen of an Indian tribe." (§ 224.1, subd. (b)(1).)

ICWA imposes an initial duty of inquiry. (*Dezi C., supra*, 16 Cal.5th at p. 1132.) "At the first contact with the child and each family member, including extended family members, [DCFS] has a duty to inquire whether

4

[a] child is or may be an Indian child." (§ 224.2, subd. (b)(1).)[2]  At the first hearing, the court must "ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child." (*Id.*, subd. (c).)

The second duty requires "further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).)  Further inquiry is triggered if DCFS or the court have "reason to believe that an Indian child is involved." (*Ibid*.) "Reason to believe" is defined as "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (*Id.*, subd. (e)(1).)

The third duty is to notify Indian tribes if the agency or the court "knows or has reason to know . . . that an Indian child is involved." (§ 224.3, subd. (a).)

ICWA requires "reasonable inquiries" of "people who are reasonably available to help the agency with its investigation." (*Dezi C., supra,* 16 Cal.5th at p. 1140.)  If a proper inquiry is not made, a reviewing court must conditionally reverse and direct the child welfare agency to comply with ICWA.  (*Id.* at p. 1136.)

**ICWA Was Satisfied**

The record shows DCFS and the court made appropriate inquiries from the time A.S. was detained.  All family members and interested parties who appeared or were interviewed were asked about A.S.'s Indian heritage. Appellants, appellants' siblings, MGF, and PGF all denied Indian ancestry.[3]

Appellants argue that the order must be reversed and the case remanded because no one asked MGM if she has Indian ancestry.  DCFS has submitted evidence that inquiry was made of MGM in May 2025, in connection with Baby Boy B.  MGM denied Indian heritage.

---

[2] Extended family members are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1).)

[3] No claim is made on appeal that Father may have Indian heritage or that his relatives were not interviewed.

On March 16, 2026, we took judicial notice of respondent's supplemental papers. Baby Boy B.'s petition has the same case number as A.S.'s petition. The same judge heard both petitions concurrently and knew MGM denied Indian ancestry before it terminated parental rights to A.S. *In re C.R.* (2025) 112 Cal.App.5th 793 is instructive. In that case, DCFS did not interview a maternal grandmother in a case but interviewed her about ICWA in a prior case assigned to the same court involving her family; the court knew the grandmother denied Indian heritage before it terminated parental rights. (*Id.* at pp. 801–803.)

On July 7, 2025, the court concurrently conducted an arraignment for Baby Boy B. and a six-month hearing for A.S. Mother's counsel said an ICWA 020 form was filed "and Mother identifies no Native American ancestry." Asked directly, Mother said, "I believe I might do. I'm not sure. I haven't checked but I'm not sure." The court asked, "Have you or any of your relatives ever lived on an Indian reservation?" Mother answered, "I'm not sure about that. I could go as far as my mom, and she's been living in the district federal [*sic*] from Mexico. Is that Indian land?" The court found no reason to know Baby Boy B. is an Indian child but directed DCFS to follow up.

Mother's statements did not trigger further inquiry. MGM and MGF denied Indian ancestry. Mother's belief that Mexico may be Indian land was misplaced. Nothing Mother said—which was belied by her parents, sister, and all Mother's prior statements—gave reason to believe the family has Indian ancestry. It was not "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).) We note that a maternal aunt will adopt A.S. ICWA's goal of preserving Indian families is met when a close relative adopts the child, who is "not facing alienation or separation from any assumed Indian ancestry." (*In re J.W.* (2022) 81 Cal.App.5th 384, 390.)

The second and third duties to inquire and inform tribes were not triggered in this case. Given family members' blanket denials of Indian heritage, neither DCFS nor the court had reason to believe that an Indian child is involved. They had no information suggesting A.S. is an Indian child.

6

**DISPOSITION**

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



RICHARDSON, J.



GILBERT, J.*

---

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.